Robert D. MURGIA, Plaintiff,

v.

COMMONWEALTH OF MASSACHU-
SETTS BOARD OF RETIRE-
MENT, Defendant.

Civ. A. No. 72-2083.

United States District Court,
D. Massachusetts.

July 21, 1972.

William F. Looney, Jr., Moulton, Loo-
ney, Mazzone, Falk & Markham, Civil

Rights—Employment, Boston, Mass., for plaintiff.

Robert Quinn, Atty. Gen. for Mass., Walter H. Mayo, III, Asst. Atty. Gen., Boston, Mass., for defendant.

## MEMORANDUM AND ORDER

CAMPBELL, District Judge.

### I

Plaintiff is the executive officer and lieutenant colonel of the Uniformed Branch of the Massachusetts State Police, with over 24 years service in that branch. On July 23, 1972, when he reaches the age of 50, he will be retired from the state police, pursuant to M.G.L. ch. 32, sec. 26(3)(a), which requires that the state board of retirement retire members of the Uniformed Branch when they reach 50 or complete 20 years service, whichever occurs later.

Plaintiff brings this action, asserting jurisdiction under 28 U.S.C. § 1343(3), to enjoin the execution of ch. 32, § 26(3)(a). He alleges that the statute discriminates against him in violation of the equal protection clause of the Fourteenth Amendment to the United States Constitution.

Plaintiff claims that he is denied equal protection of a right to employment in at least three ways:

"(a) Men have been employed by the State Police, taken a leave of absence of many years, and returned to the force and continued their employment up to age 65 because they have not completed their 20 years service.

(b) Detectives in the State Police who perform similar functions as the uniformed branch are permitted to continue in their employment under General Laws, Chapter 26(3) to the age of 65.

(c) Women in the State Police by virtue of an exception in General Laws, Chapter 22, Section 9A are permitted to continue their employment beyond the age of 50." Complaint ¶ 7.

The immediate questions before this Court are whether or not to convene a three-judge court pursuant to 28 U.S.C. Secs. 2281 and 2284, and issue a preliminary injunction restraining plaintiff's forced retirement pending final determination of the case. A hearing addressed to these questions was held on July 18, 1972. There, in addition to the arguments of counsel, the Court heard plaintiff present case-history examples and other evidence to illustrate the alleged discriminations described above. The Court also allowed a brief *amicus* statement to be made, opposing plaintiff's contentions, by counsel for the State Police Association of Massachusetts.

### II

A three-judge court is not required to be convened if the constitutional question raised is insubstantial. Ex parte Poresky, 290 U.S. 30, 54 S.Ct. 3, 78 L.Ed. 152 (1933). There the Court said:

"The existence of a substantial question of constitutionality must be determined by the allegations of the bill of complaint. . . . The question may be plainly unsubstantial, either because it is 'obviously without merit' or because 'its unsoundness so clearly results from the previous decisions of this court as to foreclose the subject and leave no room for the inference that the questions sought to be raised can be the subject of controversy.' " 290 U.S. at 32, 54 S.Ct. at 4.

More recently, the Supreme Court has reiterated that the question of substantiality is for the single judge to decide:

"When an application for a statutory three-judge court is addressed to a district court, the court's inquiry is appropriately limited to determining whether the constitutional question raised is substantial, whether the complaint at least formally alleges a basis for equitable relief, and whether the case presented otherwise comes within the requirements of the three-judge statute." Idelwild Bon Voyage Liquor Corp. v. Epstein, 370 U.S. 713, 715, 82 S.Ct. 1294, 1296, 8 L.Ed.2d 794 (1962). See also Bailey v. Patterson,

369 U.S. 31, 82 S.Ct. 549, 7 L.Ed.2d 512 (1962), Swift & Co. v. Wickham, 382 U.S. 111, 86 S.Ct. 258, 15 L.Ed.2d 194 (1965).

In deciding whether or not the constitutional question presented here is substantial, this Court feels that it should be guided by the following language of the Second Circuit Court of Appeals:

"The easiest solution for the district judge, whenever the words 'United States Constitution' or 'Fourteenth Amendment' appear in a complaint, would be to relieve himself of two-thirds of the responsibility for the decision by requesting the convening of a three judge court . . . [But a] district judge should not feel that he is merely a rubber stamp or that he exercises his judgment at his peril . . . [A]lthough this case may not be 'open and shut' (so few cases are), the decisions of the Supreme Court and other courts which are as analogous as possible to this case should be examined to ascertain whether they 'foreclose the subject.' . . . Of course, no two cases involving equal protection are alike as to facts and, were mere factual variation the test, all cases should be channeled to the Supreme Court on the chance that some distinguishing feature might be found. However, the Supreme Court reminds us that '[t]he Three-judge requirement is a technical one to be narrowly construed. Phillips v. United States, 312 U.S. 246, 251 [61 S.Ct. 480, 483, 85 L.Ed. 800].'" Johnson v. New York State Education Department, 449 F.2d 871, 875–876 (2nd Cir. 1971). Compare Jackson v. Choate, 404 F.2d 910, 913 (5th Cir. 1968).

### III

■ Upon examination of analogous Supreme Court and lower court cases, I conclude that plaintiff's federal constitutional claim is without merit.

■ This is not a case where a plaintiff is alleging discrimination based upon a suspect classification such as religion or race, or deprivation of some fundamental right such as the right to vote. Statutory classifications of such a nature are subject to special scrutiny by the courts. Brown v. Board of Education, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954), Harper v. Virginia Board of Elections, 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966).

The plaintiff has pointed to no case bringing the right sought to be protected here, the right to continued employment beyond a specified age or period of service, within the area where only a compelling interest allows the state to maintain the challenged classification. Indeed, one case plaintiff relies on did not even consider the constitutional question, Allen v. Borough of West Mifflin, 419 Pa. 394, 214 A.2d 502 (1965), and the other held *against* the officers complaining of forced retirement, Boyle v. City of Philadelphia, 338 Pa. 129, 12 A.2d 43 (1940).

■ Absent any allegations touching off strict scrutiny of the challenged classification, the task before the court is to determine whether the "classification bear[s] some rational relationship to a legitimate state purpose." Weber v. Aetna Casualty & Surety Company, 406 U.S. 164, 92 S.Ct. 1400, 31 L.Ed.2d 768 (1972), and cases cited therein.

The Supreme Court has applied this test where classifications depriving persons of employment opportunities are challenged. Kotch v. Board of River Port Pilot Comm'rs, 330 U.S. 552, 67 S.Ct. 910, 91 L.Ed. 1093 (1947), Goesaert v. Cleary, 335 U.S. 464, 69 S.Ct. 198, 93 L.Ed. 163 (1948).

According to counsel for the Commonwealth, the purpose of the challenged statute is to insure that the Uniformed Branch of the state police be a "young, vigorous force." Early retirement even of high-ranking officers gives younger men a chance for promotion and ensures that commanders possess the physical vigor to accompany their men in the field. These are surely legitimate pur-

poses. Mandatory retirement at the age of 50 is at least a rational, if not the only, means of achieving them.

True, the statute provides that a state policeman may not be retired until he has reached 20 years' service if that should occur after he has reached 50. The Commonwealth explains that this provision merely tempers the age-50 requirement in the interest of having a policeman serve long enough to merit a pension.

Under usual circumstances, a man will be forced to retire at age 50 in any event, since he may enlist in the state police for the first time only between the ages of 21 and 29. M.G.L. ch. 22, § 9A, effective Dec. 1, 1939. But it has happened, for various reasons, that some members have exceeded or will exceed age 50 when they retire. Thus, before the effective date of § 9A, some men over 29 enlisted. Others, by special statutory dispensation, were allowed to enlist after they had reached 30 if they had served in the armed forces during World War II. Ch. 22, § 9A, as amended by the Act of 1946, ch. 260.

A notarized letter by the Commissioner of Public Safety, made an appendix to this opinion, shows that most uniformed policemen over 50 at retirement are in the above two categories. The case histories produced by the plaintiff's own search do not contradict this conclusion.

Finally, in some instances, members have left and then returned to the service, and hence are over 50 before putting in 20 years total service. But as the Commissioner's notarized letter makes clear, relatively few men are in this category: Only two men presently in the service, and two men who have retired.

Only to the limited extent illustrated by the examples given above is the principal statutory purpose thwarted. The Commissioner states that since 1921 only 35 out of 2,061 individuals enlisted in the Uniformed Branch served over the age of 50.

As for the differences between the treatment of the plaintiff and the treatment of detectives and women, it is surely rational to differentiate between those whose jobs require primarily patrolling, and crime prevention and control, and those whose duties require less athletic and physically demanding work. Detectives, whose primary task is investigation, and women, whose primary task is dealing with women and children, could rationally be determined by the legislature to fall within this latter category.

That detectives and women sometimes perform physically taxing work does not, because it produces a minor inconsistency in the statutory scheme, make the statute constitutionally invalid.

It is also true that uniformed members assigned to the detective branch, or to other offices where physically demanding work is not required, are still forced to retire at 50.

This and other inconsistencies in the statutory scheme may be imperfections. But, as the Supreme Court has said:

> "In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some 'reasonable basis,' it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.' . . . 'The problems of government are practical ones and may justify, if they do not require, rough accommodations—illogical, it may be, and unscientific.' . . . 'A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.'" Dandridge v. Williams, 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970). See also Briggs v. Kerrigan, 431 F.2d 967, 968–969 (1st Cir. 1970).

■ Plaintiff's prayers for a temporary restraining order and for the con-

vening of a three-judge court are denied. As the complaint does not raise a substantial constitutional question, and as it is essential to jurisdiction that a substantial constitutional question be raised, the complaint is dismissed. Ex parte Poresky, 290 U.S. 30, 54 S.Ct. 3, 78 L.Ed. 152 (1933), Rosado v. Wyman, 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970).

### APPENDIX

### SUBMISSION ON BEHALF OF THE DEPARTMENT OF PUBLIC SAFETY

Following the letter of counsel to the Court dated July 20, 1972, the Commissioner of Public Safety caused an accelerated review of the personnel cards of the Uniformed Branch to be made, which review was completed during the evening of July 20, 1972. The original of the Commissioner's notarized letter containing the results of that review is submitted herewith.

/s/ Walter H. Mayo III
Assistant Attorney
General

Service of a copy of this statement and the accompanying letter has been made on William F. Looney, Jr., Esq., 15 Broad Street, Boston, Mass. 02109, by sending same via first class mail, postage prepaid on this 21st day of July, 1972.

The Commonwealth of Massachusetts
Department of Public Safety
1010 Commonwealth Avenue,
Boston, Mass. 02215
July 20, 1972

Mr. Walter H. Mayo, III
Chief, Administrative Division
Attorney General's Office
State House
Boston, Massachusetts 02133

Dear Mr. Mayo:

In compliance with your request, I instructed Captain Americo J. Sousa, of our Office of Internal Affairs, to review our departmental records to establish how many members of the Uniformed Branch of the Massachusetts State Police served after their fiftieth birthday, from 1921 to date.

In order to explain the various conditions of service for the personnel concerned, I have listed the number of individuals in categories:

(a) In 1939, the General Laws were amended to read: "After December 1, 1939, no person over thirty years of age shall be enlisted for the first time as an officer of the division of state police." Our records indicate that eighteen (18) former members served with the department after their fiftieth birthday. Two of this number were policewomen and all were enlisted prior to the above-mentioned law.

(b) The Acts of 1946, Chapter 260, amended Chapter 22, Section 9A, and provided that officers should not be prevented from enlistment under Section 9A, who entered the armed forces of the United States subsequent to September 16, 1940 and prior to the termination of the existing states of war between the United States and certain foreign countries—provided, that at the time of his entry into the armed forces he was less than thirty years of age and that his enlistment or appointment as such as officer is made within three years of such discharge. Our records reveal that we had eight former members of the department who fell into this category and served beyond their fiftieth birthday. The maximum age obviously would have been fifty-four.

(c) Our records further establish that we had four policewomen who served in the department after their fiftieth birthday. Three have retired and the fourth is still serving the department. This was permitted in accordance with the provisions of Chapter 22, Section 9A.

(d) In accordance with Chapter 200, of the Acts of 1950, Trooper Joseph A. Ryan was enlisted in the Uniformed Branch for the first time after passing his thirtieth birthday. His date of birth

was August 3, 1919. He was enlisted September 19, 1949 and served until July 31, 1970, when he was retired at age fifty-one.

(e) Officer Edward J. Haughey, a uniformed branch member who served until age sixty had originally enlisted on May 28, 1934 and resigned December 12, 1941. As a result of an administrative determination by former Commissioner Otis M. Whitney, this man was reappointed in accordance with Chapter 22, Section 9A on August 1, 1958. He was assigned to a specialized category because of his age, the Photography Bureau, and he served in that capacity until his retirement on January 28, 1971.

The second individual, John J. Hammond, was enlisted into the Academy July 6, 1948 and discharged by reason of resignation on July 27, 1952. He was re-enlisted October 24, 1955 and served until his retirement on September 30, 1971, at age fifty-five.

(f) At this writing, we have one uniformed branch member who is over the age of fifty, and one who will be at the time of his retirement.

Trooper Thomas L. Byrne, date of birth October 29, 1922, originally enlisted July 1, 1947 and resigned on November 30, 1947. He was reappointed a Trooper on November 21, 1955 and his mandatory retirement will be in 1975, at age 53.

Sergeant Thomas H. Peterson, date of birth October 11, 1921, was enlisted for the first time on April 7, 1948, and he served until his resignation on October 31, 1952. He was reenlisted on July 22, 1957 in accordance with Chapter 22, Section 9A and he should be eligible for retirement in 1973 at age fifty-two.

As a matter of information and reference, I am enclosing our original personnel cards and some duplicates of originals. I must request that these cards, originals and duplicates, be returned to me after you and/or the court complete your review.

In summation, since 1921, only 35 out of 2,061 individuals enlisted in the uni-

formed branch served over the age of fifty. Eighteen of the thirty-five were enlisted prior to 1939 and many of them were over their thirtieth birthdate at the time of enlistment.

Very truly yours,

(s) John F. Kehoe, Jr.
JOHN F. KEHOE, Jr.
Commissioner