**Bruich v. Borough of Ambridge**

*John Hudacsek, Jr.,* for plaintiff.
*Genevieve W. Settino,* for defendant.

KLEIN, J., January 9, 1974.—This is an action in mandamus brought by the chief of police against the borough, alleging illegal removal from office and seeking reinstatement thereto. Defendant filed an answer

denying illegality and alleging the action of removal was within the borough's powers. Defendant also filed new matter, alleging that the chief waived any rights in the premises by accepting pension checks. Plaintiff's reply averred that such action was without legal consequence in these circumstances. A trial without a jury was duly held.

From the evidence, we make the following findings of fact:

1. Charles Bruich, plaintiff, was employed as a police officer by defendant, Borough of Ambridge, on May 17, 1940, and remained as an employe of the police department until March 9, 1973, when his involuntary retirement by defendant became effective.

2. On May 1, 1959, plaintiff was promoted to the position of chief of police and continued in said capacity until he was involuntarily retired as aforesaid.

3. Plaintiff had 32 years, 9 months and 23 days service as a police officer in the Borough of Ambridge Police Department as of March 9, 1973.

4. On April 30, 1970, ordinance no. 875 was enacted by defendant council and the same was approved by the mayor on May 11, 1970, and was in effect on January 11, 1973, March 9, 1973 and remains in effect.

5. Said ordinance provides, inter alia, as follows:
" . . .

"SECTION 5. The Borough of Ambridge hereby prescribes a minimum period of total service in the aggregate of twenty-five (25) years in the Borough of Ambridge, and shall fix the age of the members of the force at fifty-five (55) years, or, if an actuarial study of the cost shows that such reduction in age is feasible, may fix the age of the members of the force at fifty (50) years after which they may retire from active duty, and such members as are retired shall be subject to service,

from time to time, as a police reserve, in cases of riot, tumult or preservation of the public peace until unfitted for such service, when they may be finally discharged by reason of age or disability. Any member employed prior to January 1, 1966, and not withstanding any provisions of Act 317 of October 31, 1965, shall be eligible to retire at age 55 providing he has completed in the aggregate of 25 years of service or after completing an aggregate of 20 years of service and attaining age 60. Any member who reaches his eligible retirement age may defer his pension and continue to work, with the consent of the Borough Council, for a period not to exceed five years."

6. On January 11, 1973, defendant council took action to involuntarily retire plaintiff, effective March 9, 1973, plaintiff's fifty-fifth birthday.

7. Council's said action of January 11, 1973, involuntarily retiring plaintiff was based solely on the mandatory retirement provisions of ordinance no. 875.

8. The minutes of said meeting of January 11, 1973, reveal no discussion relative to reducing the police force nor of retiring the chief for financial reasons.

9. At the begining of 1972 and for some time prior thereto, the complement of the Ambridge Police Department consisted of 17 men including the chief.

10. As a result of the retirement of Officer Katrinecz in April 1972, and the death of Officer Marlinga in May 1972, the said department then consisted of 15 men, including the chief.

11. There was no change in the number of police officers through January 11, 1973, and until March 9, 1973, when plaintiff's involuntary retirement became effective.

12. At a meeting held on February 28, 1973, two

new police officers were hired, and the commencement of their employment was scheduled for April 1, 1973, and May 1, 1973, respectively.

13. With the exception of longevity pay, substantially the same economy could have been effected by hiring only one additional officer as was accomplished by retiring the chief, hiring two additional officers, and promoting another police officer to chief.

14. Defendant borough did not involuntarily retire plaintiff for financial reasons.

15. Plaintiff received and negotiated pension checks commencing with the first check received in April 1973, and covering his initial retirement period.

16. Plaintiff converted his employes' life insurance policy to an individual policy.

17. Plaintiff cashed and used the proceeds of his pension checks because, otherwise, he would be unable to support himself and his family.

18. Plaintiff converted the life insurance policy because he would lose the opportunity to do so if such action were not taken promptly following termination of employment.

19. Plaintiff did not request retirement nor did he apply for retirement benefits.

20. Plaintiff advised defendant that he desired to continue serving as chief of police and was ready, willing and able to do so on January 11, 1973, March 9, 1973, and remains so ready to work.

21. On November 12, 1973, defendant council adopted a resolution decreeing mandatory retirement of all police officers at age 55 provided that they are eligible for pension beneifts, i.e., have 25 years of service.

22. Said resolution was not advertised in accordance with the provisions of section 1008 of the Borough Code of February 1, 1966, P. L. (1965) 1636, 53 PS §46008.

## DISCUSSION

In this case, we must first determine whether plaintiff voluntarily retired by accepting and cashing his pension checks and by converting his life insurance policy. We hold that said actions did not constitute voluntary retirement in these circumstances. There was no waiver of any rights, because plaintiff clearly indicated his desire to continue his employment and the use of the proceeds of his pension checks was necessary for him to maintain and support his family. Also, see Phipps v. Mellon, 18 D. & C. 2d 80 (1958), and Wyant v. North Versailles Township, no. 966, April term, 1971, Court of Common Pleas, Allegheny County.

Next, we must determine the validity of section 5 of said ordinance no. 875.

It must be implied from a reading of the section in its entirety that mandatory retirement was contemplated for police officers who met the minimum requirements of age, 55, and years of service, 25. This is so because said section provides therein:

". . . Any member who reaches his eligible retirement age may defer his pension and continue to work, with the consent of the Borough Council."

These very words which cause an interpretation of mandatory retirement are the provision which constitutes a fatal defect in the section so as to require us to conclude that section 5 is invalid.

It is certainly established law in Pennsylvania that where a bona fide attempt is made by a municipality to improve its police and fire services, and all employes of the same class are treated alike, a municipality has the right to adopt a plan of demotion and retirement based upon age limitations*: Allen v. West Mifflin

---

*We need not and do not decide the issue of whether any borough may adopt a mandatory retirement ordinance or resolution,

Borough, 419 Pa. 394 (1965); Soltis Appeal, 390 Pa. 416 (1957); Boyle v. Philadelphia, 338 Pa. 129 (1940); Commonwealth ex rel. Siani v. City of Wilkes-Barre, 164 Pa. Superior Ct. 529 (1949).

In the Allen v. West Mifflin case, the ordinance provided as follows:

"(a) Police Officers of the Borough of West Mifflin having a minimum period of total service not less than an aggregate of 20 years in the Borough of West Mifflin, may be retired from active duty with the Borough of West Mifflin, at the age of 61 years, upon appropriate action being taken by the Council of the Borough of West Mifflin."

In the instant case, the approach is different but the effect is the same. Here, police officers reaching the age of 55 years must retire unless council consents to their continuing service. No criterion is spelled out for the "consent of Council." Obviously, this ordinance permits arbitrary action by the council and it is for that reason that we must declare said section 5 invalid.

In the Allen case, supra, the Supreme Court's opinion sets forth:

"This ordinance requires that the policeman to be retired have both an aggregate of 20 years service and be 61 years old. Thus, age is not the criterion. Presumably, an officer with less than 20 years aggregate total service cannot be retired at age 61 under this ordinance. In Soltis Appeal, 390 Pa. 416, 135 A. 2d 744 (1957), we reaffirmed the position this Court took in Boyle v. Philadelphia, 338 Pa. 129, 12 A. 2d 43 (1940), wherin we said: 'Where a bona fide attempt is made by a municipality to improve its police and fire service,

compelling all police officers to retire at age 55 provided that the police cfficer has 25 years of service. Query, see Allen v. West Mifflin Borough, 419 Pa. 394 (1965), and Phipps v. Mellon, 18 D. & C. 2d 80 (1958).

and *all employees of the same class are treated alike*, it would seem that there can be no doubt that the municipality has the right to adopt a plan of demotion and retirement based upon age limitations'. (Emphasis supplied.) This ordinance, since it is not based upon age limitations or any other uniform criterion does not treat all members of the class alike. Further, its invocation is dependent upon 'appropriate action' being taken by the borough council. Such an ordinance permits arbitrary action. In Commonwealth ex rel. Siani v. City of Wilkes-Barre, 164 Pa. Superior Ct. 529, 67 A. 2d 776 (1949), the Superior Court held an ordinance giving discretion similar to that involved herein to be invalid as violative of civil service status. We find that the present ordinance by permitting termination of employment as a policeman on grounds not specified within the civil service statutes, and which are not uniform, is violative of such statutes, and thus invalid. It is therefore unnecessary to decide whether the ordinance is also unconstitutional."

The Police Retirement Law of May 29, 1956, P. L. (1955) 1804, as amended 53 PS §769, provides:

"Each ordinance or resolution establishing a police pension fund shall prescribe a minimum period of total service in the aggregate of twenty-five years in the same borough, town or township and shall fix the age of the members of the force at fifty-five years, or, if an actuarial study of the cost shows that such reduction in age is feasible, may fix the age of the members of the force at fifty years, after which they may retire from active duty, and such members as are retired shall be subject to service, from time to time, as a police reserve, in cases of riot, tumult or preservation of the public peace until unfitted for such service, when they may be finally discharged by reason of age or disability.

"Notwithstanding any provision of this act, members of a police force for whom a pension fund has heretofore been established who have attained or attain the age of sixty years, or fifty-five years, if the age had been so fixed by the ordinance or resolution, may retire after a period of *total* service of *twenty years*."

Said retirement law provides an absolute right to police officers to *voluntarily* retire when they meet the minimum requirements of the law and be eligible for a pension. For a concise history of municipal police retirement laws in Pennsylvania, see the case of Phipps v. Mellon, 18 D. & C. 2d 80 (1958).

Next, defendant borough urges that the involuntary retirement action was proper because it was done for "financial reasons." The Borough Code in its Civil Service Article does authorize removal of police officers for economy or other reasons. Section 1190, 53 PS §46190(b) provides:

". . .

"If for reasons of economy or other reasons it shall be deemed necessary by any borough to reduce the number of paid employes of the police or fire force, then such borough shall apply the following procedure: (i) if there are any employes eligible for retirement under the terms of any retirement or pension law, then such reduction in numbers shall be made by retirement of such employes, starting with the oldest employe and following in order of age respectively."

However, at the special meeting held on January 11, 1973, which was called for the sole purpose "to discuss and take action on the retirement of the Chief of Police," not a single word was uttered concerning "financial reasons" for said involuntary retirement. The chair introduced and read the provisions of the said ordinance no. 875 and the motion made, seconded and carried by a vote of 5 to 2 was stated as being:

". . . that Police Chief Bruich be retired on March 9, 1973 as provided by the ordinance calling for compulsory retirement at age 55 with 25 years of service."

We regard it as most significant that no mention was made at said special meeting of reducing the number of paid employes of the police force.

Therefore, we conclude that plaintiff was involuntarily retired under the pension ordinance solely and without regard to section 1190 of The Borough Code.

There was some indication in the testimony that economy was considered at prior committee meetings and defendant's subsequent letter to plaintiff indicates economy was a reason. However, the action of the borough must be what transpires at a regular or duly called special meeting as is recorded in the minutes. It may well be that economy was the sole motivation of the borough council, but the evidence before us is insufficient upon which to base a finding of fact to that effect.

"A municipal governing body should exercise its powers by joint action as a board; loose discussions without any motion or united action are not sufficient": P. L. Encyc. 249 §66.

"A municipal governing body speaks through its records, and hence a correct record of its proceedings should be kept. In the absence of evidence of fraud or bad faith, the minutes of a meeting of a municipal council are conclusive as to its proceedings": 25 P. L. Encyc. §69.

Further, if economy was the reason, we believe that defendant functioned under a misapprehension. A police officer may not be removed from office under section 1190 for reasons of economy unless the number of paid employes is being reduced simultaneously, the reduction in force constituting the economy. In this

case, defendant hired two new police officers between the date of action retiring the chief and the effective date of the retirement without any other vacancies occurring.

Lastly, the borough council adopted a resolution on November 12, 1973, spelling out that retirement under ordinance no. 875 shall be mandatory for all police officers at age 55 provided that the police officer qualifies for pension as to the number of years of service. It is conceded that said resolution was not advertised as is required by section 1008 of The Borough Code, 53 PS §46008. Consequently, said resolution is of no force or effect: Krajcirik v. Lansford Borough, 50 D. & C. 2d 467 (1970).

## CONCLUSIONS OF LAW

1. Section 5 of Borough of Ambridge Ordinance No. 875 is invalid.

2. The resolution adopted by the Council of the Borough of Ambridge on November 12, 1973, relative to mandatory retirement of police officers is ineffective.

3. The Act of May 29, 1956, P. L. (1955) 1804, sec. 3, 53 PS §769, as amended, provides for *voluntary* retirement of police officers meeting certain minimum requirements as to years of service and age.

4. Plaintiff, Charles Bruich, is eligible for retirement with pension benefits.

5. Plaintiff, Charles Bruich, was involuntarily retired by defendant borough under and pursuant to section 5 of said ordinance no. 875 by action taken at its special meeting on January 11, 1973, retirement to be effective on March 9, 1973, plaintiff's fifty-fifth birthday.

6. Plaintiff was not removed from his employment

as a police officer under and pursuant to section 1190 of The Borough Code, 53 PS §46190.

7. The acceptance of pension checks by plaintiff did not convert his involuntary retirement into a voluntary retirement on his part.

8. Plaintiff is entitled to reinstatement as chief of police with pay, benefits, rights and privileges dating back to March 9, 1973.

9. Defendant has the duty to so reinstate plaintiff.

10. There is no adequate remedy at law.

For these reasons, we enter the following

## ORDER

And now, January 9, 1974, unless exceptions are filed within 20 days, it is ordered, adjudged and decreed that, on praecipe judgment be entered for plaintiff and against defendant, in accordance with Pennsylvania Rules of Civil Procedure 1099 and 1038; that defendant, Borough of Ambridge, acting through its council, reinstate plaintiff to the office of chief of police; that plaintiff be paid back wages due him from March 9, 1973, to the date of reinstatement in compliance herewith, less (1) pension fund charges payable by plaintiff between March 9, 1973, and date of reinstatement, (2) pension benefits received by plaintiff for the period from March 9, 1973, to the date of reinstatement, (3) vacation pay, if any, paid to plaintiff in the period from March 9, 1973, to date of reinstatement, and (4) less any other appropriate deductions required by Federal, State or local law.

It is further ordered that the Council of the Borough of Ambridge shall cause appropriate payments to be made by the borough to the pension fund required by the pension plan for the account of plaintiff, if any such payments are so required for the period from March 9, 1973, until the date of reinstatement, and to take

other necessary and appropriate action to reinstate plaintiff's interest in the pension fund as a contributory member, and restore plaintiff to his proper position on all rosters and records of the Borough of Ambridge and the Police Civil Service Commission of said borough from the ninth day of March, 1973.

Costs on defendant, Borough of Ambridge.