Boyle et al., Appellants, *v.* Philadelphia et al.

Argued January 31, 1940.   Before SCHAFFER, C. J., MAXEY, DREW, LINN, STERN, BARNES and PATTERSON, JJ.

M. *Herbert Syme*, of *Syme & Simons*, for appellants.

*James Francis Ryan*, with him *William Austin Welsh*, Assistant City Solicitors, and *Francis F. Burch*, City Solicitor, for appellees.

OPINION BY MR. JUSTICE DREW, March 27, 1940:

This is an appeal from the decree of the learned court below, which dissolved a temporary injunction and dismissed a bill in equity brought by and on behalf of certain members of the Fire and Police Bureaus of the City of Philadelphia to restrain the enforcement of those provisions of the City Budget Ordinance of December 15, 1939, affecting firemen and policemen of the age and position of appellants.* Briefly stated, the question for our decision is whether the council of the City of Philadelphia, by provisions made part of a budget ordinance, may provide for the compulsory retirement at the age of sixty-five and for the classification as second class at the age of sixty of all laddermen and hosemen of the Fire Bureau and all patrolmen of the Police Bureau.

---

* The pertinent items of the Ordinance are:

A-16 Personal Services (column 41): "That hosemen or laddermen over sixty years of age, and those under that age declared incapacitated, except by injuries sustained in line of duty, for the duties of hosemen or laddermen by Chief Surgeon of the Medical Division, shall be hosemen or laddermen of the second class, all other hosemen or laddermen shall be of the first class.

"PROVIDED, That on and after January 1, 1940, there shall be compulsory retirement for all employees in this item who shall have reached the age of sixty-five years."

A-6 Personal Services (column 40) contains similar wording with regard to patrolmen.

To ask the question is to answer it. Of course, in the absence of express statutory prohibition, the power is inherent in a municipality to prescribe reasonable and nondiscriminatory superannuation classifications, similar to those here set up, with respect to its firemen and policemen. Experience has demonstrated that generally one who has attained the age of sixty or sixty-five does not possess the physical vitality or energy of a younger man. Some maximum age limitation is particularly desirable, in fact necessary, for hoseman, ladderman, and patrolman, because the duties of those positions demand a greater degree of physical vigor and alertness than that exacted of superior officers. Such employees are frequently required to perform work which is strenuous and dangerous. They must possess physical fitness and a mental attitude that will cause them to disregard personal safety in the public service. While there are some individual exceptions, it is undoubted that the man of sixty is not as physically able to perform exhausting duties as is a younger man. Certainly, it is also true that he has developed a mental attitude of caution to danger that would be disregarded by one more youthful. Acts of strength, endurance, and bravery are not usually performed by men of three score years. They are generally physically incapable of such action. Whether the age at which the average man's physical and mental conditions show him unfit for strenuous and hazardous work is fifty, sixty, or seventy is a question determined by the exercise of sound discretion based on experience, and that is exactly what the city council did in the ordinance before us. That the action taken represents a wise public policy cannot be doubted. There is no discrimination in the classes embraced in the ordinance, and no political, religious or personal motives are behind its enactment.

We do not agree with appellants that this plan is forbidden by legislative mandate. Demotion or removal based upon a general, nondiscriminatory age limitation,

does not contravene section 18, article XIX of the Act of June 25, 1919, P. L. 581, wherein it is provided that policemen and firemen shall not be removed or discharged, except for cause, upon written charges, and after a public hearing. The purpose of all civil service legislation is to insure service during good behavior, and to protect employees against improper personal attack. The protection holds during service, but does not guarantee duration of service over any particular period of time. Concerning civil service acts, we said in *Essinger v. New Castle,* 275 Pa. 408, at 411: " 'The purpose of the civil service statute, and of other laws prohibiting the discharge of employees without cause assigned, notice, and a hearing, is to insure the continuance in public employment of those officers who prove faithful and competent, regardless of their political affiliations. These statutes are not intended to affect or control the power of the city council, or the executive officers of the city, to abolish offices when they are no longer necessary, or for reasons of economy. They are not intended to furnish an assurance to the officer or employee that he will be retained in the service of the city after the time when his services are required. They do not prevent his discharge in good faith without a trial, and without notice, when the office or body is abolished as unnecessary, or for reasons of economy.' " Appellants concede that the city might remove them at any time for reasons of economy by abolishing their positions: *Leary v. Philadelphia,* 314 Pa. 458.

It is contended that the Leary and Essinger cases do not apply, since no economy is contemplated by the ordinance. It is true that the 1940 budget, as set forth in the ordinance, provides for more employees and for greater expenditures in the affected classes than in 1939. In considering this aspect of the case the learned judge of the court below said: "I think this takes too narrow a view of the term 'economy'. Economy and efficiency are supposed to run together, and in the Essinger case

the Supreme Court stated the question as involving both, although it later mentioned only economy in its *ratio decidendi*. It is a small step, if it is a step at all. Certainly the retirement of aging men can be defended on the ground of efficiency, and in my view it can also be defended on the ground of economy . . . My point is that the idea of economics in a Budget covers more than merely lower expenditures and fewer positions than the year before. A higher budget with more positions may be economical in view of current needs."

We agree that in considering municipal needs efficiency is as important and necessary as economy. The two go hand in hand in any well regulated policy of government. Where a bona fide attempt is made by a municipality to improve its police and fire service, and all employees of the same class are treated alike, it would seem that there can be no doubt that the municipality has the right to adopt a plan of demotion and retirement based upon age limitations. To say that for economy a police force can be reduced, but for efficiency men too old for real service cannot be retired, does not make sense. This is not the case of an individual, it is the case of all patrolmen, hosemen, and laddermen of Philadelphia. Our decision rests upon the particular facts here presented, involving a general, nondiscriminatory age classification. It does not open the door to removals for political or partisan reasons, made under the pretense of economy or efficiency.

Appellants also urge that this system of compulsory retirement violates the Pension Act of May 20, 1915, P. L. 566, section 3, as amended by the Act of July 5, 1917, P. L. 689, section 1. Appellees on the other hand insist that policemen and firemen were protected by pension or retirement pay prior to the Act of 1915, and are by section 10 of that Act expressly exempted from its terms. However, it makes no difference, since by the establishment of a pension or retirement pay the legislature does not guarantee to public employees a tenure

for the period of service specified as necessary to fulfill the pension requirements, nor does it intend thereby to interfere with the full right of a municipality to dismiss its employees for cause or for reasons of efficiency or economy. Underlying all pension legislation is the necessary principle that one who has been legally discharged prior to serving the prescribed term cannot share in the pension or retirement benefits. We so decided in *Leary v. Philadelphia,* supra, where economy prompted the dismissal of certain policemen who had not yet served long enough to earn a pension.

Decree affirmed.