Opinion by
 

 Hoffman, J.,
 

 The single issue in this case is whether the Director of Public Safety of Scranton may lawfully promulgate an order which provides for the retirement of all policemen and firemen at the age of sixty-five.
 

 
 *527
 
 On September 8, 1967, the Director of Public Safety of Scranton issued an order directing the retirement of all policemen and firemen who reach their sixty-fifth birthday. Each of the five policemen-appellees was over sixty-five at the time and was dismissed from his position with the City. Subsequently, they filed this action in mandamus seeking payment of their salaries from the date of retirement and reinstatement to their former positions.
 

 The lower court, on appellant’s motion for judgment on the pleadings and stipulation of the facts by the respective parties, directed that judgment be entered in favor of the policemen. The City appealed.
 

 The City’s argument is set out in essence, in the following statement: “The power to hire and remove eim ployees in Second Class A Cities is vested in the Director of Public Safety
 
 by statute,
 
 as follows:
 

 “The directors or chief officers of departments shall appoint all subordinate officers, clerks, employes, and by written order, giving their reasons therefor may remove or suspend subordinate officers and clerks, provided the same is not done for political reasons.’ Article XII, §2 of the Act of 1901, March 7, P. L. 20, as amended, 53 P.S. §22510. . . The power thus reposed by statute in the Director of Public Safety impliedly includes the inherent power to retire employes for superannuation purposes. Not having prohibited superannuation retirement and not having otherwise specifically designated Council, another department or another officer in whom is vested the power to so retire employees, it was the intention of the legislature to include that power to retire within the power to remove vested in the Director of the Department of Public Safety.”
 

 The lower court rejected the argument of the City, relying heavily on the force of civil service legislation
 
 *528
 
 for Cities of the Second Class, as amended. It pointed out that the power to hire and remove policemen is no longer vested in the Director of Public Safety, but is subject to civil service procedures. It points out further that no employee under civil service may be removed from his position unless the city adheres to those procedures. Thus, the court held that the Director’s “power under this sixty-seven year old statute because of civil service is now nil; it will not sustain the promulgation of the retirement directive.”
 

 In our opinion, reference to the civil service laws alone is not fully dispositive of this case, for our Supreme Court has clearly indicated that the power to establish a mandatory retirement age for municipal employes is not precluded by civil service legislation. See
 
 Boyle v. Philadelphia,
 
 338 Pa. 129, 12 A. 2d 43 (1940), and
 
 Soltis Appeal,
 
 390 Pa. 416, 135 A. 2d 744 (1957).
 

 In
 
 Boyle,
 
 supra, the City Council of Philadelphia provided by ordinance for the mandatory retirement of policemen and firemen of certain classifications. The court held: “Of course, in the absence of express statutory prohibition, the power is inherent in a municipality to prescribe reasonable and nondiscriminatory superannuation classifications, . . . Demotion or removal based upon a general nondiscriminatory age limitation, does not contravene [the civil service legislation] wherein it is provided that policemen and firemen shall not be removed or discharged, except for cause, upon written charges, and after a public hearing.” at 131-32.
 

 Similarly in
 
 Soltis Appeal,
 
 supra, the City Council of Duquesne, a third class city, passed an ordinance requiring all policemen to retire and apply for pensions at age sixty-five. The Supreme Court held that the right to a civil service hearing applies only in cases involving dismissal for misconduct, incompetence or
 
 *529
 
 the like, and did not affect the retirement ordinance. In distinguishing various other cases in which the power of the council to act had been denied, the court stated, “[I]t is evident the court [in those cases] was concerned solely with the
 
 discharge
 
 and
 
 dismissal
 
 of a city employee. The instant case deals strictly with
 
 retirement.
 
 Without defining the distinguishing terms of that line of cases and the instant appeals, we are certain that a known and marked difference exists between the words ‘dismissal’ and ‘retirement.’ ” at 419-420.
 

 In short, then we can agree with the City of Scranton that the power to remove individuals for incompetence or other reasons, although vested in the civil service authorities, has not affected whatever power the Director of Public Safety may have had to provide for retirement on a nondiscriminatory basis. The issue for us to consider is whether the power to issue retirement directives ever reposed in the Director of Public Safety in light of his statutory power to “remove” employes. If it was the intention of the legislature to grant him this power originally, we can well agree that this power has not been abrogated by civil
 
 [1]
 
 service legislation. On the other hand, if the Director’s power to “remove” was intended to be of a more limited nature, involving only dismissal or discharge of employees on an individual basis for cause, this power has been superseded in those cases involving employees subject to civil service regulations.
 

 Neither our research, nor the research of counsel for appellants or appellees, has uncovered a case which has considered whether the power of the Director to “remove” includes the power to issue retirement regulations. We believe, however, that a careful analysis of
 
 Soltis Appeal,
 
 supra, does give us some guidance in the area.
 

 
 *530
 
 As noted earlier,
 
 Soltis Appeal,
 
 snpra, involved a retirement ordinance promulgated by city council. The retired employees contended that the council ivas without the power in this area by reason of civil service legislation. The court rejected this argument, holding that it was within the power of the council to enact, this ordinance.
 

 The appellant distinguishes
 
 Soltis Appeal
 
 on the ground that it involved the City of Duquesne, a third class city. It argues, therefore, that “These cases involved ordinances because the power to hire and remove in cities of the third class was vested in the City Council by Statute. See the Act of 1931, June 23, P. L. 932, Art. IX, §901; 53 P.S. §35901.”
 
 [1]
 

 Significantly, however, the Supreme Court in
 
 Soltis
 
 did not rely on any express power in The Third Class City Code, which would have made clear that the City’s power to retire employees emanated from specific legislative sanction. Rather, the Supreme Court cited
 
 Boyle,
 
 supra, a case which stands for the proposition that it is an inherent power of council to enact retirement ordinances. In support of this conclusion, the court presented the following reasoning:
 

 “Moreover, they allege, since the state has enacted certain laws pertaining to the dismissal or suspension^ of civil service employes, the city is precluded from passing a mandatory retirement age for employes. But if the State Legislature has seen fit to legislate and enable cities of the Third Class to establish pension boards and retirement funds, inferentially it has left to the municipality certain details of administration and control of those matters not legislated upon by the state, which are certainly necessary to the orderly and proper functioning of a retirement or pension fund.
 
 *531
 
 As far as policemen, are concerned, the Third Class City Code establishes minimum eligibility for retirement, but not a maximum as far as age is concerned. Therefore, it must follow that the legislature intended the local municipalities to enact ordinances in this area, provided, that they be reasonable, general and non-discriminatory.”
 

 Thus, the Supreme Court found the intent of the legislature to be that the body which manages the retirement fund be identical to that which controls the retirement age. The basis for the Supreme Court’s reasoning is clear. It is the council’s responsibility to project actuarily the needs of the fund in coming years, and to assure that municipal employees will receive appropriate pension benefits upon retirement. Consequently, it must safeguard the integrity of the fund, assuring its soundness and stability. The legislature found it imperative, therefore, that the council control the age at which employees shall retire. Any other system, which would grant such power to individual department heads, could result in the undermining of the intention of council and the reasonable expectations of employees. Consider, for example, the ensuing chaos, if a director were to order a retirement age of fifty-eight while the pension fund would pay benefits starting only at age sixty-three.
 

 This reasoning applies fully in the instant case. In Scranton, a City of the Second Class A., the legislature has given council the power to establish and regulate pension and retirement funds. See Act of May 24, 1893, P. L. 129, as amended, 53 P.S. §761 et seq. It seems clear to us that the legislature, when promulgating the Second Class City Code, did not intend that the council provide for the retirement fund, while the directors of the various departments determine the age of retirement. Rather, as indicated in
 
 Soltis,
 
 the ex
 
 *532
 
 press legislative power granted to council to manage the fund carried with it the implied power to determine the age at which employees should retire. This determination becomes particularly relevant when we consider that the statute relied upon by the City applies not only to the Director of Public Safety but to the directors of all departments. Were we to accept the City’s interpretation, each department chief could' establish a retirement plan of his own requiring that council continually re-examine and readjust its pension plans to conform with directors’ administrative regulations. In the absence of a clear legislative expression to the contrary, we find that the legislature intended that the retirement age and retirement funds be coordinated by council; it did not intend that these two closely interrelated problems be controlled by a| multitude of independent forces.
 

 We hold, therefore, that the power granted to the Director of Public Safety under the Second Class Safety Code, to “remove” employees involves the right to discharge or dismiss employees only to the extent that this power has not been curtailed by civil service legislation; it does not carry with it the power to issue broad retirement directives, which power is reposed solely in the council.
 

 Order affirmed.
 

 [1]
 

 We do not here consider the correctness of appeUants’ analysis of The Third Class City Code.