Philadelphia *v.* Human Relations Commission.

Argued January 4, 1972, before President Judge
BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKIN-
SON, JR., MENCER, ROGERS and BLATT.

*Albert J. Persichetti,* Deputy City Solicitor, with
him *Levy Anderson,* City Solicitor, for appellant.

*Stanton W. Kratzok,* Assistant General Counsel,
with him *S. Asher Winikoff,* General Counsel, *Salvatore
J. Cucinotta,* Deputy Attorney General, and *J. Shane
Creamer,* Attorney General, and, of counsel, *Roy Yaffe,
Robert Englesberg* and *Gerald E. Magaro,* for appellee.

OPINION BY JUDGE KRAMER, February 24, 1972:
This is an appeal from a "Final Order" of the Penn-
sylvania Human Relations Commission (Commission),

dated August 2, 1971, under which the City of Philadelphia (City) was ordered, *inter alia,* to grant to the complainant, Joanne B. Rossi (Rossi) ". . . the opportunity to apply to be employed as a Fairmount Park policeman . . . by executing an application for the position of policeman. . . ."

On August 8, 1969, Rossi filed a Complaint with the Commission,[1] alleging an unlawful discriminatory practice by the City in violation of the Pennsylvania Human Relations Act of October 27, 1955, P. L. 744, as amended, 43 P.S. §951 et seq.[2] In the Complaint Rossi averred: "On or about to wit, August 8, 1969, the respondents [City] refused to allow the application for the position of Fairmount Park policeman and the opportunity of employment in that position to the complainant [Rossi] because of the sex (female) of the complainant."

Despite the importance of the case, counsel for the Commission on behalf of Rossi presented a surprisingly brief case in chief.[3] This Court, in common with other appellate courts, applauds brevity, but not at the expense of proving a case. The most that can be gained from that portion of the record pertinent to the Complaint is that Rossi appeared at an office of the City, accompanied by a friend, some time during August of

---

[1] The Complaint was later amended on June 19, 1970, in only one particular, that is, a change of address for the complainant.

[2] At 43 P.S. 955, it is provided, *inter alia,* "It shall be an unlawful discriminatory practice . . . (a) For any employer because of . . . sex . . . of any individual to refuse to hire or employ, or to bar . . . from employment such individual . . . if the individual is the best able and most competent to [perform] the services required."

[3] The case in chief through two witnesses, with no exhibits, is set forth on ten pages of the transcript, with twenty-two pages of cross-examination, after which counsel for the Commission rested his case.

1969, where she requested an application blank for a position of "a Fairmount Park Policeman."[4] A female clerk at the desk advised Rossi that she could not give her an application form because "women were not permitted to apply." At that time Rossi was offered an application for the position of "Policewoman."[5]

The remainder of the record is taken up with the City's response (1) that there is no provision under the City's Code or Ordinances for an application by anyone for the position of "Fairmount Park Policeman" (or "Guard") and (2) an attempt to justify a bona fide occupational qualification (BFOQ) under the exemption provisions of the Act, *supra*, 43 P.S. 955. There was also rebuttal testimony.

---

[4] A careful reading of the record discloses an inconsistency in the testimony pertaining to the position for which Rossi desired to apply and was denied an application form. Rossi spoke of applying for the position of Fairmount Park Policeman. In Exhibit R-1, she stated her intention to apply for the "Park Police Officer" examination. However, on the reverse side, in answering a question relating to past employment qualifying her for the examination, she listed her equestrian experience, indicative of an intention to apply to the Fairmount Guard. Counsel for the Human Relations Commission spoke of her applying for a position with the "Fairmount Park Guard." Similarly, Dr. Alexander V. Riasanovsky, a witness for the Commission, spoke of Rossi applying for the "Fairmount Park Guard."

The Fairmount Park Guard is a mounted unit within the Fairmount Park Police, its complement filled from the general ranks of the Fairmount Park Police. As our forthcoming discussion will indicate, direct application to either the "Fairmount Park Police Force" or to the "Fairmount Park Guard" was improper.

[5] We note from the record that Rossi made application for a position as a "Policewoman" on May 27, 1969, that she was examined, accepted and placed on the eligibility rolls, after which she was removed for other disqualifying reasons. No appeal was taken from that removal action by the City. Rossi also signed a third application for "Policeman II" on January 22, 1970, but the record is silent on what happened to that application.

The record is devoid of any proof presented by either Rossi or the Commission that a position in the Fairmount Park Police Force is secured through the filling in of an application, distinct and apart from the application forms and procedures utilized in the securing of a position on the Philadelphia Police Force. Quite to the contrary, there is evidence to the effect that the Fairmount Park Police is but one of a number of separate divisions within the Philadelphia Police Department. It is only after one has been accepted as a member of the Philadelphia Police Force, or placed upon the rolls of the eligibility list, that the question of specific assignment to a division arises.

The Fairmount Park Police is a semi-autonomous division commanded by its own superintendent. Its primary duties are within seven specific geographic areas, although it does answer emergency calls outside park areas. All Fairmount Park policemen are drawn from the Philadelphia Police Force. When women are needed for special police work by the Fairmount Police Force, they are called from the ranks of Philadelphia Policewomen.[6] The record is very clear that no person presently on the Fairmount Police Force obtained a position thereon by an application directed to the Fairmount Park Police Force.

Because there exists no specific and separate application form for either the Fairmount Park Police Force or the Fairmount Park Guard, the complainant has not presented to this Court a proper complaint with a supporting record whereupon we may determine in review whether or not she has suffered sex discrimination in the manner proscribed by the statute. Several portions of the record clearly indicate that Rossi had no inten-

---

[6] Although Philadelphia Policewomen receive the same pay and general employment benefits of Policemen, the application requirements and police work for women are historically less strenuous.

tion of ever applying for the position of Policeman on the Philadelphia Police Force, but rather was applying for a position in the mounted "Guard." Logic and the law dictate that one who attempts to challenge a procedure must frame that challenge in a proper manner so as to afford an appellate court a proper scrutiny. We are faced with a complainant who ignored the Philadelphia Police Force appointment procedures and failed to build a record so as to properly bring before this Court an issue of sex discrimination. This failure leaves us no alternative but to reverse the Order of the Commission. Any other course would be improvident and untimely.

The importance of this matter and the apparent lack of understanding manifested by both the Commission and the City relating to the differences between the filing of a complaint and the filing for a BFOQ exemption necessitates comment by this Court.

There can be no doubt that the legislative intent, found in the Act, *supra,* is to eliminate sex discrimination in job opportunity. This Court, in a very recent opinion, in the case of *Pittsburgh Press Company v. Pittsburgh Commission on Human Relations,* as yet not reported, but filed on January 27, 1972, has set forth its understanding of the law in this area. We were not given the opportunity in this case to rule on whether a woman is illegally discriminated against by the refusal of an application for the position of a "Policeman." However, we hasten to add that under the Pennsylvania Human Relations Act, *supra,* every person must be given the opportunity to apply for any job opportunity not legally exempted. It is only after a proper application is filed that the City can apply its standards to determine whether a person is qualified for the job sought.

Although we have acted to reverse the Order of the Commission for the reasons aforementioned, we do,

however, note with approval the suggestion of the Commission that Rossi be permitted initially to file for the position of Policeman.

We recognize that under the law every municipality must be given the power to establish those reasonable standards under which it will hire people for employment, such as police work. Those standards must be presumed to be valid until attacked and held to be illegal by a proper adjudicature.

. The method to challenge or test the legality of those standards is provided by the Act, *supra,* 43 P.S. 957, through the filing of a complaint with the Commission. It naturally follows that a refusal, because of sex, to accept an application for a job *available* can also be challenged by the filing of a complaint.

The Act, *supra,* at 43 P.S. 957, establishes the powers and duties of the Commission with regard to complaints. Section 9 of the Act, *supra,* 43 P.S. 959, sets forth a mandatory procedure of investigation (on "probable cause"), "conference, conciliation and persuasion." If the matter is not settled, and, on complaint, goes to hearing, the burden is on the complainant and counsel for the Commission to prove their case.

There is nothing in the Act, *supra,* which permits the Commission to materially alter the charge of the complaint to some other matter, at the hearing, or in the Commission's adjudication, as was done in this case. Here the Commission in its findings and conclusions attempted to place the burden of proof onto the City as though this was an exemption case. This was contrary to the Commission's own "Guidelines."[7]

---

[7] The Commission's "Guidelines on Discrimination Because of Sex," Pa. Bulletin, Vol. 1, No. 24, December 19, 1970, provides the procedure for securing exemptions, and therein it is stated: "The fact that a bona fide occupational qualification exemption is secured after a complaint is filed will not affect the subject matter

An exemption (43 P.S. 955), on the other hand, is requested by the employer by an application under the Commission's "Guidelines." In such a case, the burden is on the employer to prove his case. *See Weeks v. Southern Bell*, 408 F. 2d 228 (5th Cir. 1969).[8]

The Commission cannot transform a complaint proceeding into an exemption proceeding and thereby shift the burden of proof as was attempted in this case.

In any event, the record in this case does not support the charge, because there was no proof offered that the position alleged to have been denied the complainant (either on the Fairmount Park Police Force or the Fairmount Park Guard) was directly available to anyone by the application requested by complainant and therefore, based upon the above analysis, we

### ORDER

AND Now, this 24 day of February, 1972, the Final Order of the Pennsylvania Human Relations Commission dated August 2, 1971, in the above-noted case, is hereby set aside.

---

of the complaint. In fact, the Commission's exemption, if granted, will only be effective after the resolution of any complaints presently pending against the requesting party."

[8] In the *Weeks* case, *supra*, the court held that the employer has "the burden of proving that he had a reasonable cause to believe, that is a factual basis for believing, that all or substantially all women would be unable to perform safely and efficiently the duties of the job involved" to support an exemption application.