## McIlvaine, Appellant, v. Pennsylvania State Police.

Argued April 26, 1973. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY and NIX, JJ.

*Boyd H. Walker,* for appellant.

*J. Andrew Smyser,* Deputy Attorney General, with him *Israel Packel,* Attorney General, for appellee.

*Sanford Kahn,* for Pennsylvania Human Relations Commission, amicus curiae.

OPINION BY MR. JUSTICE POMEROY, October 3, 1973:

In July, 1970, appellant Joseph McIlvaine, having reached the age of sixty, was involuntarily retired from the Pennsylvania State Police after some 37 years of service. In all respects other than his chronological age, appellant was admittedly suitable for continued employment. His dismissal was by the Commissioner of Police, acting pursuant to Section 205 of the Adminis-

trative Code of 1929, Act of April 9, 1929, P. L. 177, 71 P.S. §65(d).[1] Shortly after dismissal, appellant filed a petition for declaratory judgment in the Commonwealth Court, praying that the court construe and declare unconstitutional the cited provision of the Administrative Code and that the defendants (the Commissioner of the Pennsylvania State Police and the Secretary of the Commonwealth) be directed to continue to employ the plaintiff until such time as he should submit his resignation or attain age 65. In dismissing the suit, the Commonwealth Court held that although the doctrine of sovereign immunity was not a bar, in this type of case, to recovery against the state and its officers (*Philadelphia Life Ins. Co. v. Commonwealth*, 410 Pa. 571, 190 A. 2d 111 (1963)), nevertheless, as a result of "the doleful history of declaratory judgments in Pennsylvania", such a suit was improper because "there exists another available and appropriate remedy". *McIlvaine v. McKetta*, 1 Pa. Commonwealth Ct. 262, 268, (1971). Thereupon, following the advice offered in the Commonwealth Court opinion, appellant commenced in the same forum the instant suit in mandamus.

Appellant both below and here has contended that Section 205(d), supra, is invalid as (1) unreasonable and discriminatory; (2) violative of appellant's civil rights under the Pennsylvania constitution[2] and the

---

[1] Section 205(d) provides: "(d) Any member of the Pennsylvania State Police, except the Commissioner and Deputy Commissioner, regardless of rank, who has attained or who shall attain the age of sixty years, shall resign from membership in the said police force: Provided, however, That the provision of this paragraph shall not apply to members of the State Police Force who upon attaining the age of sixty years shall have less than twenty years of service. Upon completion of twenty years of service, the provision of this paragraph shall become applicable to such persons."

[2] Article I, Section 26 (adopted May 16, 1967) provides: "Neither the Commonwealth nor any political subdivision thereof shall

Pennsylvania Human Relations Act;[3] and (3) violative of the Fourteenth Amendment to the Federal Constitution. The Commonwealth Court rejected all three arguments (6 Pa. Commonwealth Ct. 505, 296 A. 2d 630 (1972)) and this appeal followed.

At the outset, we feel obliged to speak to the procedural aspects of this litigation. Through mandamus, appellant seeks to compel a public official (the Pennsylvania State Police Commissioner) to disregard and act directly contrary to the plain directive of the statute by continuing to employ him, a member of the State Police Force, beyond the age of sixty years. This is precisely the antithesis of what mandamus is designed to accomplish. As we said in *Philadelphia Presbytery Homes, Inc. v. Abington Board of Commissioners,* 440 Pa. 299, 303-4, 269 A. 2d 871 (1970): "Mandamus to compel a governmental ministerial officer to act in disobedience of the requirements of the relevant statute, before there has been a judicial pronouncement of the Act's invalidity, is not the normal procedure for testing the constitutionality of a statute." See also *Unger v. Hampton Township,* 437 Pa. 399, 263 A. 2d 385 (1970); *Booz v. Reed,* 398 Pa. 172, 157 A. 2d 170 (1960).

Under normal circumstances, utilization of a remedy so completely inappropriate would be fatal, and would foreclose any treatment of the merits. Appellant's case, however, does not fit any normal pattern. When the Commonwealth Court dismissed the declaratory judg-

---

deny to any person the enjoyment of any civil right, nor discriminate against any person in the exercise of any civil right."

[3] For example Section 2(b) of the Act of October 27, 1955, P. L. 744, as amended, 43 P.S. 952(b) provides in pertinent part: "It is hereby declared to be the public policy of this Commonwealth to foster the employment of all individuals in accordance with their fullest capacities regardless of their . . . age . . ., and to safeguard their right to obtain and hold employment without such discrimination. . . ."

ment suit, it relied, quite correctly, on the then applicable holdings of this Court that a suit for a declaratory judgment is an extraordinary as opposed to alternate remedy. See, e.g., *C. H. Pitt Corp. v. INA,* 435 Pa. 381, 257 A. 2d 857 (1969); *Sheldrake Estate,* 416 Pa. 551, 207 A. 2d 802 (1965); *McWilliams v. McCabe,* 406 Pa. 644, 179 A. 2d 222 (1962). Since there were other available and adequate remedies,[4] plaintiff was in the wrong store, as it were. He was advised, however, to pursue mandamus, which, as has already been pointed out, is wholly inappropriate.

Considered in light of our recent decision in *Friestad v. Travelers Indemnity Co.,* 452 Pa. 417, 306 A. 2d 295 (1973) which established declaratory judgment as an alternate remedy, and overruled the line of cases relied on in the first Commonwealth Court opinion, 1 Pa. Commonwealth Ct. 262, the effect of our dismissal of the present action on the ground of mistaken remedy would be to kick this plaintiff from pillar to post without any fault whatever on his part. Rather than causing him the loss of time and money entailed in starting all over again, we choose to treat the instant action as one requesting declaratory relief. So viewed, we affirm the order of the Commonwealth Court on the opinion of President Judge BOWMAN. 6 Pa. Commonwealth Ct. 505, 296 A. 2d 630 (1972). See also *Soltis Appeal,* 390 Pa. 416, 135 A. 2d 744 (1957); *Boyle v. Philadelphia,* 338 Pa. 129, 12 A. 2d 43 (1940).

Mr. Justice MANDERINO took no part in the consideration or decision of this case.

Mr. Justice EAGEN concurs in the result.

---

[4] Appellant could have sought the aid of equity to compel his reinstatement, appealed to the courts from the informal decision of the Commissioner or sued in assumpsit to recover for wages unlawfully withheld.

DISSENTING OPINION BY MR. JUSTICE ROBERTS:

After thirty-seven years of service to the Commonwealth, Joseph McIlvaine was involuntarily retired. The majority concedes that "appellant was admittedly suitable for continued employment." Nevertheless, in adopting the opinion of the Commonwealth Court, the majority upholds McIlvaine's dismissal. It is undisputed that the sole reason for appellant's discharge was the fact that he had attained the age of sixty. I cannot join in this arbitrary termination of a concededly competent public servant.

I agree with the majority that in view of the rather bizarre procedural history of the case it should be treated as an action for declaratory relief. See *Friestad v. Travelers Indemnity Co.*, 452 Pa. 417, 306 A. 2d 295 (1973); *McIlvaine v. McKetta,* 1 Pa. Commonwealth Ct. 262 (1971). However, I am compelled to dissent from the majority's conclusion that McIlvaine's involuntary termination is constitutionally and statutorily permissible. In my view the action of the Commonwealth violated the Pennsylvania Constitution, Article I, Section 26, as well as the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

## I

The opinion of the Commonwealth Court, adopted today by the majority, states that "[t]o reach the conclusion plaintiff would have us reach . . . we would have to hold that the Pennsylvania Human Relations Act prohibits discharge from employment by reason of age without exception, a conclusion which the statute does not permit us to reach." *McIlvaine v. Pennsylvania State Police,* 6 Pa. Commonwealth Ct. 505, 512, 296 A. 2d 630, 633 (1972). Were this the only available analysis of this case, I would join the majority in denying declaratory relief. However appellant readily admits

that the Human Relations Act itself makes provision for two exceptions to its general prohibition against age discrimination.

"It shall be an unlawful discriminatory practice, unless based upon a bona fide occupational qualification, or in the case of a fraternal corporation or association, . . . or except where based upon applicable security regulations established by the United States or the Commonwealth of Pennsylvania: . . .

"(a) For any employer because of the race, color, religious creed, ancestry, *age,* sex or national origin of any individual to refuse to hire or employ, or to bar or to discharge from employment such individual, or to otherwise discriminate against such individual with respect to compensation, hire, tenure, terms, conditions or privileges of employment, if the individual is the best able and most competent to perfrom [sic] the services required. . . ."[1] This statutory provision abundantly illustrates that it is not every "discharge from employment by reason of age" which the Act prohibits. It being clear that only certain age-inspired discharges violate the Act, the question is whether appellant McIlvaine's involuntary retirement, mandated by Section 205(d) of the Administrative Code[2] violates his rights as declared by the Human Relations Act.

---

[1] "The provision of this paragraph shall not apply, to (1) termination of employment because of the terms or conditions of any bona fide retirement or pension plan, (2) operation of the terms or conditions of any bona fide retirement or pension plan which have the effect of a minimum service requirement, (3) operation of the terms or conditions of any bona fide group or employe insurance plan." Act of October 27, 1955, P. L. 744, §5, as amended, 43 P.S. §955 (Supp. 1973) (emphasis added). I do not here express any opinion on the question of constitutionality vel non of 43 P.S. §§955(a)(2) and (3). The Commonwealth has not attempted to justify appellant's dismissal on either of these grounds.

[2] "(d) Any member of the Pennsylvania State Police, except the Commissioner and Deputy Commissioner, regardless of rank,

If, as the majority asserts, this case involved only the interpretation and harmonization of two seemingly contradictory statutes, one might be persuaded to rely on this Court's pre-1968 pronouncements on mandatory retirement in public employment.[3] However, such reliance is no longer within our power in view of the 1968 constitutional amendment which necessarily invalidates Section 205(d) of the Administrative Code.

Article I, Section 26 of the Pennsylvania Constitution, adopted May 16, 1967, declares unconstitutional discrimination by the Commonwealth.

"Neither the Commonwealth nor any political subdivision thereof shall deny to any person the enjoyment of any civil right, nor discriminate against any person in the exercise of any civil right." The Commonwealth does not, nor could it reasonably deny that the rights of public employees are constitutionally protected.[4] Furthermore, the Human Relations Act declares that, "[t]he opportunity for an individual to obtain employment for which he is qualified, and to obtain all the accommodations, advantages, facilities and privileges of any place of public accommodation and of commercial

---

who has attained or who shall attain the age of sixty years, shall resign from membership in the said police force: Provided, however, That the provision of this paragraph shall not apply to members of the State Police Force who upon attaining the age of sixty years shall have less than twenty years of service. Upon completion of twenty years of service, the provision of this paragraph shall become applicable to such persons." Act of April 9, 1929, P. L. 177, as amended, Act of July 10, 1957, P. L. 682, 71 P.S. §65(d) (Supp. 1973).

[3] See *Soltis Appeal*, 390 Pa. 416, 135 A. 2d 744 (1957) ; *Boyle v. Philadelphia*, 338 Pa. 129, 12 A. 2d 43 (1940). See also *Beynon v. Scranton*, 212 Pa. Superior Ct. 526, 243 A. 2d 190 (1968) ; *Siani v. Wilkes-Barre*, 164 Pa. Superior Ct. 529, 67 A. 2d 776 (1949).

[4] *Schware v. Board of Bar Examiners*, 353 U.S. 232, 238-39, 77 S. Ct. 752, 756 (1957). See my dissenting opinion in *Adler v. Montefiore Hospital*, 453 Pa. 60, 82, 311 A. 2d 634, 646 (1973) (joined by MANDERINO, J.) and cases cited therein.

housing without discrimination because of race, color, religious creed, ancestry, age, sex or national origin are hereby recognized as and declared to be civil rights which shall be enforceable as set forth in this act."[5] Thus, the right to employment free from age discrimination is a civil right protected by both the Human Relations Act and the 1968 Constitution. If, as the majority determines, Section 205(d) mandates appellant's retirement at age sixty, this termination based solely on age is discriminatory and violates both the Human Relations Act and Article I, Section 26 of the Constitution.

The Commonwealth Court correctly observed that "[t]he Pennsylvania Human Relations Act does not absolutely protect one against discharge from employment by reason of age; it does not guarantee retention of employment until death or proof of the employee's inability to perform. Rather, it is designed to protect against *discrimination* in discharge from employment by reason of age and in doing so recognizes a 'bona fide occupational qualification' as nondiscriminatory. . . ." 6 Pa. Commonwealth Ct. at 511, 296 A. 2d at 633.

However, that court erred when it declared: "[P]laintiff appears to assert, without any supporting proof in the record, that a mandatory retirement age for State police officers as a class is not a bona fide occupational qualification. To merely say so is not enough, particularly in light of the Soltis and Boyle cases, *supra*. The fact that a particular police officer is physically fit and able to perform his duties or that minds may differ upon the particular mandatory retirement age selected by the Legislature is not proof of want of bona fides as to the qualification otherwise applied uniformly and nondiscriminatorily to the selected class." Id. at 512, 296 A. 2d at 633.

---

[5] Act of October 27, 1955, P. L. 744, §1, as amended, 43 P.S. §953 (Supp. 1973).

The Commonwealth and its agencies are, for purposes of the Human Relations Act to be treated as any other "employer."[6] When a bona fide occupational qualification (BFOQ) exemption is sought by an employer, he, and not the complaining employee, must prove facts bringing the particular job classification within the exception. *Philadelphia v. Human Relations Commission,* 4 Pa. Commonwealth Ct. 506, 287 A. 2d 703 (1972).[7]

Federal courts, interpreting Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000 et seq. (Supp. 1972),[8] have likewise held the burden of establishing a BFOQ is on the employer. For example, in *Weeks v. Southern Bell Telephone Co.,* 408 F. 2d 228 (5th Cir. 1969), a sex discrimination case, the Court of Appeals for the Fifth Circuit concluded "that the principle of nondiscrimination requires that we hold that in order to rely on the bona fide occupational qualification exception an employer has the burden of proving that he had reasonable cause to believe, that is, a factual basis for believing, that *all or substantially all* women would be unable to perform safely and efficiently the duties of the job involved." Id. at 235 (emphasis supplied).[9]

*Rosenfeld v. Southern Pacific Co.,* 444 F. 2d 1219 (9th Cir. 1971), presented another attempt by an employer to justify sexual discrimination on the basis of a BFOQ. Judge HAMLEY, writing for the court, observed "that Congress, . . . established by Title VII the policy that individuals must be judged as individu-

---

[6] See Id. at 43 P.S. §954(b) (Supp. 1973).

[7] See also *Cerra v. East Stroudsburg Area School Dist.,* 450 Pa. 207, 299 A. 2d 277 (1973).

[8] See generally, Developments in the Law—Title VII, 84 Harv. L. Rev. 1109, 1176-95 (1971).

[9] See *Griggs v. Duke Power Co.,* 401 U.S. 424, 91 S. Ct. 849 (1971).

als, and not on the basis of characteristics generally attributed to racial, religious, or sex groups. . . ." Id. at 1225. The court in deciding that Southern Pacific's employment policy was not excusable as a BFOQ, concluded "that the Commission [Equal Opportunity Employment Commission] is correct in determining that BFOQ establishes a narrow exception inapplicable where, as here, employment opportunities are denied on the basis of characterizations of the physical capabilities and endurance of women, even when those characteristics are recognized in state legislation." Id. at 1227. These persuasive authorities are in accord with our Pennsylvania cases. *Philadelphia v. Human Relations Commission,* supra; *Cerra v. East Stroudsburg Area School District,* 450 Pa. 207, 299 A. 2d 277 (1973). Shifting the burden to appellant, as the Commonwealth Court did in this instance, is clearly erroneous.

The Commonwealth asserts that it is well settled in Pennsylvania that the power to establish a mandatory retirement age for police officers is constitutional. *Soltis Appeal,* 390 Pa. 416, 135 A. 2d 744 (1957) ; *Boyle v. Philadelphia,* 338 Pa. 129, 12 A. 2d 43 (1940).[10] While this may have at one time represented the prevailing view, the adoption in 1968 of Article I, Section 26 of the Pennsylvania Constitution denuded those cases of all precedential value.[11] The Commonwealth Court and

---

[10] Accord, *Beynon v. Scranton,* 212 Pa. Superior Ct. 526, 243 A. 2d 190 (1968) ; *Siani v. Wilkes-Barre,* 164 Pa. Superior Ct. 529, 67 A. 2d 776 (1949).

[11] The holding in *Soltis Appeal,* 390 Pa. 416, 135 A. 2d 744 (1957) has been rejected by Article I, Section 26. *Boyle v. Philadelphia,* 338 Pa. 129, 12 A. 2d 43 (1940), is inapplicable to the present case. Writing for the Court in *Boyle,* Justice DREW addressed facts remarkably similar to the instant case.

"Of course, in the absence of express statutory prohibition, the power is inherent in a municipality to prescribe reasonable and non-discriminatory superannuation classifications, similar to those here set up, with respect to its firemen and policemen." Id. at 131, 12

the majority of this Court, while undoubtedly recognizing the supremacy of the Constitution, nevertheless rely on pre-1968 decisions. It is apparent that Section 205 (d) of the Administrative Code of 1929 as applied by the majority permitting denial based solely on age is in clear conflict with Article I, Section 26 of the Pennsylvania Constitution which prohibits age discrimination.

## II

I must also note my dissent from the majority's adoption of the Commonwealth Court's conclusion that discharge of appellant pursuant to Section 205(d) of the Administrative Code of 1929 does not violate the Equal Protection Clause of the Fourteenth Amendment.[12] The instant case presents a paradigmatic equal protection violation which this Court should not hesitate to recognize and correct. Failure to afford appellant relief will, it is suggested, serve to give aid and comfort to those who continue to believe that citizens may be arbitrarily pigeonholed for the convenience of the bureaucracy.

Section 205 of the Administrative Code of 1929 reads: "Any member of the Pennsylvania State Police, . . . who has attained or who shall attain the age of sixty years, shall resign from membership in the said

---

A. 2d at 44. This conclusion was correct in 1940 when *Boyle* was decided. However, in 1973, an "express statutory prohibition," the Pennsylvania Human Relations Act, as well as the constitutional amendment mandate the opposite result.

[12] While in my view the Pennsylvania Constitution requires reversal as a matter of state law, the equal protection clause provides a separate and distinct ground for this dissent. See Karst, Serrano v. Priest: A State Court's Responsibilities and Opportunities in the Development of Federal Constitutional Law, 60 Calif. L. Rev. 720 (1972).

police force. . . ."[13] The question which must be faced squarely is whether such a legislative determination is within the proper scope of the legislative function.[14]

Since its adoption in 1868, the equal protection clause has grown and matured through judicial interpretation.[15] Originally conceived of as a vehicle for the protection of the lately emancipated black race,[16] its scope has been extended to mandate "strict scrutiny" of any classification based on race, national ancestry,[17] or alienage.[18] Of late, signs have emerged that sex[19] has joined the group of sorting techniques which require searching judicial analysis. It has been further sug-

---

[13] Act of April 9, 1929, P. L. 177, as amended, Act of July 10, 1957, P. L. 682, 71 P.S. §65(d) (Supp. 1973). For the full text of this section see note 2, supra.

[14] See 6 Pa. Commonwealth Ct. at 513, 296 A. 2d at 634. I do not express any opinion on the propriety of the Commonwealth Court's decision that neither the exemption of the commissioner and the deputy commissioner nor that of officers with less than twenty years of service violates the equal protection clause. Id. at 510, 296 A. 2d at 632-33.

[15] See Tussman & tenBroek, The Equal Protection of the Laws, 37 Calif. L. Rev. 341 (1949) ; Developments in the Law—Equal Protection, 82 Harv. L. Rev. 1065 (1969) ; Gunther, The Supreme Court 1971 Term—Foreword: In Search of Evolving Doctrine on a Changing Court: A Model for a Newer Equal Protection, 86 Harv. L. Rev. 1 (1972).

[16] Slaughter-House Cases, 83 U.S. (16 Wall.) 36 (1872).

[17] Kramer v. Union Free School Dist., 395 U.S. 621, 89 S. Ct. 1886 (1969) ; Loving v. Virginia, 388 U.S. 1, 87 S. Ct. 1817 (1967) ; Korematsu v. United States, 323 U.S. 214, 65 S. Ct. 193 (1944) ; Plessy v. Ferguson, 163 U.S. 537, 552, 16 S. Ct. 1138, 1144 (1896) (HARLAN, J., dissenting).

[18] See Takahashi v. Fish & Game Comm'n, 334 U.S. 410, 68 S. Ct. 1138 (1948) ; Oyama v. California, 332 U.S. 633, 68 S. Ct. 269 (1948).

[19] Frontiero v. Richardson, 411 U.S. 677, 93 S. Ct. 1764 (1973) (four of eight participating Justices declare sex a suspect classification) ; Stanley v. Illinois, 405 U.S. 645, 92 S. Ct. 1208 (1972). See Reed v. Reed, 404 U.S. 71, 92 S. Ct. 251 (1971) (nominally applying the traditional rational basis test).

gested that classifications having a differential impact on particular income groups should be added to the circle of cases in which the reviewing court will require a "compelling state interest" in order to justify the classification.[20]

Also recognized as requiring heightened equal protection analysis have been cases involving "fundamental interests." This class of interests includes procreation,[21] voting,[22] the rights of the criminal defendant,[23] and to a somewhat more limited extent, education,[24] the right to travel,[25] and the right to privacy.[26]

To be sure, the traditional "rational basis" test is yet applied, particularly in cases of economic regulation.[27] Until recently, in only one case has a legislative classification been found wanting under the traditional test, and there, the statute in question exempted from its purview one named corporation.[28]

---

[20] Michelman, The Supreme Court, 1968 Term—Foreword: On Protecting the Poor Through the Fourteenth Amendment, 83 Harv. L. Rev. 7 (1969).

[21] *Skinner v. Oklahoma ex rel. Williamson*, 316 U.S. 535, 62 S. Ct. 1110 (1942).

[22] *Dunn v. Blumstein*, 405 U.S. 330, 92 S. Ct. 995 (1972) ; *Harper v. Virginia Bd. of Elections*, 383 U.S. 663, 86 S. Ct. 1079 (1966) ; *Reynolds v. Sims*, 377 U.S. 533, 84 S. Ct. 1362 (1964).

[23] See, e.g., *Griffin v. Illinois*, 351 U.S. 12, 76 S. Ct. 585 (1956).

[24] See, e.g., *Brown v. Board of Ed.*, 347 U.S. 483, 74 S. Ct. 686 (1954) ; Goldstein, Interdistrict Inequalities in School Financing: A Critical Analysis of Serrano v. Priest and Its Progeny, 120 U. Pa. L. Rev. 505, 534-44 (1972). But see *San Antonio Ind. School Dist. v. Rodriguez*, 411 U.S. 1, 93 S. Ct. 1278 (1973).

[25] *Dunn v. Blumstein*, 405 U.S. 330, 92 S. Ct. 995 (1972) ; *Shapiro v. Thompson*, 394 U.S. 618, 89 S. Ct. 1322 (1969).

[26] *Roe v. Wade*, 410 U.S. 113, 93 S. Ct. 705 (1973) ; *Griswold v. Connecticut*, 381 U.S. 479, 85 S. Ct. 1678 (1965).

[27] *Railway Express Agency v. New York*, 336 U.S. 106, 69 S. Ct. 463 (1949) ; *Williamson v. Lee Optical*, 348 U.S. 483, 75 S. Ct. 461 (1955) ; *F. S. Royster Guano Co. v. Virginia*, 253 U.S. 412, 40 S. Ct. 560 (1920).

[28] *Morey v. Dowd*, 354 U.S. 457, 77 S. Ct. 1344 (1957).

Recently, however, perhaps because of a reluctance to declare new categories subject to strict scrutiny, the rational basis test has been revitalized thereby moving its effect closer to the late Justice JACKSON'S conception of equal protection.

"Invocation of the equal protection clause, . . . does not disable any governmental body from dealing with the subject at hand. It merely means that the prohibition or regulation must have a broader impact. I regard it as a salutary doctrine that cities, states and the Federal Government must exercise their powers so as not to discriminate between their inhabitants except upon some reasonable differentiation fairly related to the object of regulation. This equality is not merely abstract justice. The framers of the Constitution knew, and we should not forget today, that there is no more effective practical guaranty against arbitrary and unreasonable government than to require that the principles of law which officials would impose upon a minority must be imposed generally. Conversely, nothing opens the door to arbitrary action so effectively as to allow those officials to pick and choose only a few to whom they will apply legislation and thus to escape the political retribution that might be visited upon them if larger numbers were affected. Courts can take no better measure to assure that laws will be just than to require that laws be equal in operation."[29]

As Professor Gerald Gunther has perceptively noted, since 1970 the United States Supreme Court has moved steadily away from rigid standards—either compelling state interest or rational basis—in testing state legislation against the equal protection clause. Gunther, The Supreme Court 1971 Term, Foreword: In Search of

---

[29] *Railway Express Agency v. New York*, 336 U.S. 106, 111-13, 69 S. Ct. 463, 466 (1949) (JACKSON, J., concurring), cited in Gunther, *supra* n.15 at 22-23.

Evolving Doctrine on a Changing Court: A Model for a Newer Equal Protection, 86 Harv. L. Rev. 1 (1972). There have been notable attempts to drop the two-tiered rhetoric and adopt a single test for all equal protection cases.[30] "The emerging model of modest interventionism would have the courts do more than they have done for the last generation to assure rationality of means, without unduly impinging on legislative prerogatives regarding ends."[31]

The development of the single-test equal protection formula is illustrated by Mr. Justice WHITE's concurring opinion in *Vlandis v. Kline,* 412 U.S. 441, 456, 93 S. Ct. 2230, 2238 (1973). The opinion of the Court declared invalid on due process grounds Connecticut's irrebuttable presumption that a student, non-resident when beginning college in the state remained, for tuition purposes, a non-resident throughout his education. Mr. Justice WHITE based his concurrence on the equal protection clause.

"From these and other cases, such as Dandridge v. Williams, 397 U.S. 471, 90 S. Ct. 1153, 25 L. Ed. 2d 491 (1970); Reed v. Reed, 404 U.S. 71, 92 S. Ct. 251, 30 L. Ed. 2d 225 (1971); Frontiero v. Richardson, 411 U.S. 677, 93 S. Ct. 1764, 36 L. Ed. 2d 583 (1973), and Weber v. Aetna Casualty & Surety Co., 406 U.S. 164, 92 S. Ct. 1400, 31 L. Ed. 2d 768 (1972), it is clear that we employ not just one, or two, but, as my Brother Marshall has so ably demonstrated, a 'spectrum of standards in reviewing discrimination allegedly violative of the Equal Protection Clause.' San Antonio Independent School District v. Rodriguez, 411 U.S. 1, pp. 98-99, 93 S. Ct. 1278, p. 1330, 36 L. Ed. 2d 16 (dissenting opinion). Sometimes we just say the claim is 'invidious' and let the matter rest there, as Mr. Justice STEWART did, for

---

[30] See Gunther, supra n.15 at 17-20.
[31] Id. 23.

example, in concurring in Frontiero. But at other times we sustain the discrimination, if it is justifiable on any conceivable rational basis, or strike it down, unless sustained by some compelling interest of the State, as, for example, when a State imposes a discrimination that burdens or penalizes the exercise of a constitutional right. See, e.g., Shapiro v. Thompson, 394 U.S. 618, 89 S. Ct. 1322, 22 L. Ed. 2d 600 (1969). I am unconfortable with the dichotomy, for it must now be obvious, or has been all along, that, as the Court's assessment of the weight and value of the individual interest escalates, the less likely it is that mere administrative convenience and avoidance of hearings or investigations will be sufficient to justify what otherwise would appear to be irrational discriminations." 412 U.S. at 458-59, 93 S. Ct. at 2239-40.[32]

The "sliding scale" approach to equal protection expounded by Mr. Justice WHITE has found expression in two recent opinions of the Court.[33] Mr. Justice MARSHALL, speaking for the majority in *Police Department v. Mosley*, 408 U.S. 92, 92 S. Ct. 2286 (1972), concluded that "[a]s in all equal protection cases, however, the crucial question is whether there is an appropriate governmental interest suitably furthered by the differential treatment." Id. at 95, 92 S. Ct. at 2290. In *Weber v. Aetna Casualty & Surety Company*, 406 U.S. 164, 92 S. Ct. 1400 (1972), Mr. Justice POWELL examined the two-tiered test and concluded that neither standard would be strictly applied.

"The essential inquiry in all the foregoing cases is, however, inevitably a dual one: What legitimate state

---

[32] See *James v. Strange*, 407 U.S. 128, 92 S. Ct. 2027 (1972); *Jackson v. Indiana*, 406 U.S. 715, 92 S. Ct. 1845 (1972); *Humphrey v. Cady*, 405 U.S. 504, 92 S. Ct. 1048 (1972); *Eisenstadt v. Baird*, 405 U.S. 438, 92 S. Ct. 1029 (1972).

[33] See Gunther, supra n.15 at 17-18.

interest does the classification promote? What fundamental personal rights might the classification endanger." Id. at 173, 92 S. Ct. at 1405.

It is thus clear that the lines of the strict two-tiered equal protection are becoming blurred. In an effort to avoid mechanistic application of a rigid, stultified dogma, the United States Supreme Court has moved toward a single, sliding-scale equal protection test. This movement is to be applauded since courts may now analyze the means employed by the Legislature in all cases. Although more thorough judicial inquiry into legislative classifications is now possible, determination of substantive goals remains, as in the past, the particular province of the Legislature. The courts may not, under the rubric of equal protection, usurp the legislative function.

Testing the instant case against these standards, it is clear that appellant McIlvaine's discharge pursuant to Section 205(d) of the Administrative Code is in violation of his right to the equal protection of the laws. In reaching this conclusion under the test outlined above, it is necessary to consider together the gravity of the interest affected by the legislative classification—appellant's right to continued employment—and the characteristic of the class thereby regulated—attaining age 60. This factor must then be balanced against the interest of the state in the means—an arbitrary age classification—used to implement the particular regulatory scheme—dismissal of all who attain age sixty irrespective of competency to continue performance of assigned duties.[34]

---

[34] In equal protection cases courts may only consider the means which the Legislature adopts in order to effectuate its substantive policy. Only through studious adherence to this tenet of equal protection analysis may return to the discredited doctrine of substantive due process be avoided. See *Lochner v. New York*, 198 U.S. 45, 25 S. Ct. 539 (1905).

In the instant case it is clear that the Act's scope is unreasonably broad. Appellant is admittedly qualified to continue his duties as a troop commander. Physically he meets all state police standards. His mental capacity has in no way declined. Yet in order to promote what can be no more than mere administrative convenience, the Commonwealth asserts that it has the absolute right to dismiss him. I cannot agree.

Under the equal protection test which should, in my view, apply, the classification must demonstrate a "significant relationship" to the legislative purpose.[35] Where such a relationship in fact exists, it must then be balanced against the nature of the class thereby disadvantaged. Here the means used to achieve the Act's purpose is an arbitrary age classification.[36] There is no

---

[35] *Weber v. Aetna Cas. & Sur. Co.,* 406 U.S. 164, 175, 92 S. Ct. 1400, 1406 (1972). See also *Reed v. Reed,* 404 U.S. 71, 92 S. Ct. 251 (1971) ; Gunther, supra n.15 at 34-35. I note that the classification here involved is not the narrowest which could accomplish the Legislature's purpose. The present classification scheme is overbroad. See *Shelton v. Tucker,* 364 U.S. 479, 81 S. Ct. 247 (1960) ; *NAACP v. Alabama,* 377 U.S. 288, 84 S. Ct. 1302 (1964) ; Developments in the Law, supra n.15, at 1086-87.

[36] The nature of the classification here in question should also weigh heavily in our consideration. A classification must be subjected to more searching analysis where it is closed-ended—that is where a class member may not, through his own efforts, remove himself from the disadvantaged group. Such classifications are, for example, race, alienage, national origin, sex, and, of course, age. This is not to imply that all age classifications affecting "fundamental rights" are constitutionally impermissible. Minimum age requirements may eventually be outgrown. However, where, as here, the class singled out for special treatment is distinguished by a maximum age, class membership once achieved is permanent. Thus our analysis must go deeper than it would were the distinguishing characteristic of the class otherwise. As Mr. Justice STONE suggested in his famous footnote to *United States v. Carolene Products Co.,* 304 U.S. 144, 152-53, n.4, 58 S. Ct. 778, 783-84 n.4 (1938) (concurring opinion).

showing that age is significantly related to McIlvaine's performance of his duties as troop commander. On the contrary, the Commonwealth concedes that appellant is in all respects physically and mentally competent to perform all his required duties. A classification system which mandates this anomalous result is violative of the equal protection clause where, as here, the Commonwealth has advanced no interest other than mere administrative convenience. This record demonstrates that appellant has, through the mechanistic application of this discriminatory statute, been denied an equal opportunity to continue in his chosen profession—one for which he is admittedly eminently qualified.

Such a preemptory denial of McIlvaine's right to the equal protection of the laws mandates that he be reinstated. The majority's refusal to grant appellant relief compels dissent.

Mr. Justice NIX joins in this dissenting opinion.

---

"[P]rejudice against discrete and insular minorities may be a special condition, which tends seriously to curtail the operation of those political processes ordinarily to be relied upon to protect minorities, and which may call for a correspondingly more searching judicial inquiry."